# United States Court of Appeals
## For the First Circuit

No. 18-1443

BARBARA FAWCETT, individually and on behalf of all others
similarly situated,

Plaintiff, Appellant,

v.

CITIZENS BANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

Edward F. Haber, with whom Patrick J. Vallely and Shapiro
Haber & Urmy LLP were on brief, for appellant.
David J. Zimmer, with whom Brenda R. Sharton and Goodwin
Procter LLP were on brief, for appellee.

March 26, 2019

**LYNCH**, **Circuit Judge**.  This putative class action alleges that Citizens Bank's "Sustained Overdraft Fees" for overdrawn checking accounts are usurious interest charges in violation of Section 85 of the National Bank Act, 12 U.S.C. § 1 et seq.  The district court concluded that Citizens Bank's fees were not "interest" under the Act and so dismissed the action for failure to state a claim.  Order, Fawcett v. Citizens Bank, N.A., No. 4:17-cv-11043-TSH (D. Mass. Apr. 19, 2018), ECF No. 36.

On the facts of this case, we hold that Citizens Bank's "Sustained Overdraft Fees" are not "interest" under the National Bank Act.  This result follows from regulatory text and history and from persuasive, directly applicable reasoning presented in the Office of the Comptroller of the Currency's Interpretive Letter 1082, issued in 2007.  We affirm.

I.

A.

The National Bank Act (NBA) governs the business activities of national banks like Citizens Bank.  The Office of the Comptroller of the Currency (OCC), the agency Congress has charged with implementing the NBA, oversees national banks' operations and interactions with customers.  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 6 (2007).

The NBA allows a national bank to charge "interest at the rate allowed by the laws of the State . . . where the bank is

located."  12 U.S.C. § 85.  The NBA does not define the term "interest."  The Supreme Court has held that the term "interest" is ambiguous and that OCC is due deference in interpreting it. Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 739 (1996) (citing Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984)).

OCC has, in regulations promulgated after notice and comment, defined the term "interest" as used in Section 85 of the NBA:

> The term 'interest' as used in 12 U.S.C. [§] 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended.
> It includes, among other things, the following fees connected with credit extension or availability:
> - numerical periodic rates,
> - late fees,
> - creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds,
> - overlimit fees,
> - annual fees,
> - cash advance fees, and
> - membership fees.
> It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

12 C.F.R. § 7.4001(a) (bullet points and line breaks added).[1] When a charge is "interest," its rate cannot exceed "the maximum rate permitted to any state-chartered or licensed lending institution by the law of [the state where the bank is located]." Id. § 7.4001(b). This maximum interest rate is called a "usury limit." See, e.g., M. Nahas & Co., Inc. v. First Nat. Bank of Hot Springs, 930 F.2d 608, 610 (8th Cir. 1991) (using the term).

If a bank's charge is not "interest," however, then the guidelines for "deposit account service charges" apply. 12 C.F.R. § 7.4002. Deposit account service charges are not subject to usury limits. See id. A bank may, at its discretion, impose a deposit account service charge and set its amount, so long as the bank acts within the bounds of "sound banking judgment and safe and sound banking principles." Id. § 7.4002(b)(2).

Because the parties draw different conclusions from regulatory history, we recount that history here. In 2001, OCC revisited its definition of "interest." OCC said that fees like "overdraft and returned check charges" imposed by a bank on its checking account customers were "deposit account services" charges and not "interest." 66 Fed. Reg. 8178, 8180 (Jan. 30, 2001). OCC then noted a gap in its regulations: If a bank's overdraft fee exceeded its returned check fee, then the difference between those

---

[1] These regulations were in effect throughout the alleged class period here.

- 4 -

two charges -- its excess overdraft charge -- "could be viewed as interest within the meaning of [the NBA]." Id. OCC stated that its regulation "did not expressly resolve this issue" and invited comment. Id.

OCC published its final rule, set forth above, after the comment period closed. OCC noted that it had "received numerous comments" on whether "any portion of the fee imposed by a national bank when it pays an overdraft" should constitute "interest" under the NBA. 66 Fed. Reg. 34784, 34787 (July 2, 2001). Given the "complex and fact-specific concerns" that including "any portion of a charge imposed in connection with paying an overdraft" in the definition of "interest" would raise, OCC decided to "not amend[] [12 C.F.R.] § 7.4001(a) to address this issue." Id.

OCC next addressed excess overdraft fees in Interpretive Letter 1082 on May 17, 2007. An unnamed bank described its overdraft fee structure to OCC and asked the agency whether under the NBA and OCC's regulations it could, "(1) in its discretion, honor items for which there are insufficient funds in depositors' accounts and recover the resulting overdraft amounts as part of the Bank's routine maintenance of these accounts; and (2) establish, charge and recover overdraft fees from depositors' accounts for doing so." Office of the Comptroller of the Currency, Interpretive Letter No. 1082, 2007 WL 5393636, at *1 (May 17, 2007). The bank seeking guidance "charge[d] a Continuous Overdraft

Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn." Id. at *1 n.3 (emphasis added). OCC noted this and said that the bank's practices posed no issues under the NBA or the OCC's regulations interpreting the NBA. Id. at *1. OCC explained that "[c]reating and recovering overdrafts have long been recognized as elements of the discretionary deposit account services that banks provide." Id. at *2.

B.

Citizens Bank is a national bank that offers checking account services to its customers. When a Citizens Bank customer overdraws her account, Citizens Bank has two options: It can either (1) cover the overdraft or (2) decline to cover the overdraft and return the check.

Citizens Bank charges a fee in both instances. If Citizens Bank returns a check, it charges a $35 "Returned Item Fee." If Citizens Bank honors the check, it charges a $35 "Overdraft Fee." If the account remains overdrawn after Citizens Bank has honored the check and charged the initial overdraft fee, Citizens Bank then charges a "Sustained Overdraft Fee." It charges that "Sustained Overdraft Fee" three times: $30 four business days after the overdraft, another $30 after seven business days, and a final $30 after ten business days. The complaint does not

- 6 -

allege that Citizens Bank charges any "Sustained Overdraft Fees" after the ten-business-day mark.

On the facts presented here, then, Citizens Bank may charge a customer up to $90 more to honor her overdraft than it charges her to not cover it. This case considers whether that $90 difference -- Citizens Bank's excess overdraft charge -- is "interest" under the NBA.

## C.

Fawcett filed her complaint in Massachusetts federal district court on June 7, 2017. The complaint alleges that Citizens Bank's "Sustained Overdraft Fees" violate the NBA because they constitute "interest" at a rate above that allowed by Rhode Island, the state in which Citizens Bank is located.[2] See 12 U.S.C. § 85; 12 C.F.R. § 7.4001(b). The complaint does not challenge either Citizens Bank's "Returned Item Fee" or its "Overdraft Fee."

Citizens Bank moved to dismiss.[3] The district court held a hearing on that motion and then dismissed Fawcett's complaint

---

[2] The complaint alleges that during the class period the maximum interest rate allowed in Rhode Island was twenty-one percent. For purposes of the motion to dismiss, there is no dispute that Citizens Bank's "Sustained Overdraft Fees" exceeded that rate.

[3] Citizens Bank also moved to stay the case and compel arbitration. The district court denied that motion. Citizens Bank has not appealed that denial.

with a short text order. That order says that the court would "follow the overwhelming majority of jurisdictions which have ruled that sustained overdraft fees are not considered interest under the NBA," apparently referring to cases cited in the briefing.

Fawcett timely appealed.

## II.

We review de novo the decision to grant a Rule 12(b)(6) motion to dismiss. Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018). In doing so, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Id. (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52-53 (1st Cir. 2013)).

Throughout, we are mindful that OCC, as the primary regulator of national banks chartered under the NBA, is entitled to "great weight" in interpreting the banking laws. Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 403–04 (1987) (quoting Inv. Co. Inst. v. Camp, 401 U.S. 617, 626–27 (1971)); accord Smiley, 517 U.S. at 739 (deferring to OCC under Chevron); NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995) (same).

## A.

As the law currently stands, Interpretive Letter 1082 resolves this case. The bank that requested OCC's guidance there

charged a flat excess overdraft charge to customers whose accounts remained overdrawn after the initial overdraft fee was imposed. 2007 WL 5393636, at *1 n.3. OCC said that practice was consistent with the NBA and OCC's regulations interpreting the NBA. Id. at *1. OCC thus concluded that the precise practice here is lawful.[4]

OCC's interpretation of its own regulations is controlling under Auer v. Robbins, 519 U.S. 452 (1997).[5] Under Auer, an interpretation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" Auer, 519 U.S. at 461 (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)).[6]

---

[4] The dissent argues that Interpretive Letter 1082 does not resolve this issue. But the bank seeking guidance there "describe[d] in some detail [its] process for honoring and clearing overdraft items and for establishing, charging, and recovering overdraft fees." 2007 WL 5393636, at *1. That process included "charg[ing] a Continuous Overdraft Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn." Id. at *1 n.3 (emphasis added). Fawcett specifically admitted this at oral argument. And OCC noted this practice and confirmed that the bank's practices were lawful. This cannot be described as "silence" on the issue of whether flat excess overdraft charges like that bank's comport with the NBA.

[5] At least one circuit has applied Auer deference to OCC's interpretive letters. See Wells Fargo Bank of Tex. NA v. James, 321 F.3d 488, 494-95 (5th Cir. 2003) (deferring under Auer to a position OCC advanced in an interpretive letter). And the Supreme Court has granted Auer deference to interpretations advanced in even less formal documents, such as an internal advisory memorandum, e.g., Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171 (2007), and an amicus brief, e.g., Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 209 (2011).

[6] We recognize that the Supreme Court granted certiorari in Kisor v. Wilkie, 139 S. Ct. 657 (2018) (No. 18-15), which asks

Fawcett has made no argument that OCC plainly erred in interpreting its own regulation or that OCC's interpretation is inconsistent with the text of its regulation. Fawcett does, however, advance three arguments for why OCC's interpretation in Interpretive Letter 1082 otherwise does not merit deference. We reject each argument in turn.

First, Fawcett argues that Auer deference does not apply because Interpretive Letter 1082 analyzes OCC's regulation governing non-interest charges, 12 C.F.R. § 7.4002, not its "interest" regulation, 12 C.F.R. § 7.4001. This is a non-starter. The bank asked for OCC's guidance "under the National Bank Act and [OCC] regulations." 2007 WL 5393636, at *1. And under OCC's regulations, a charge is either "interest" or it is a "non-interest charge[]," which includes "deposit account service charges." 12 C.F.R. § 7.4002(a); see id. § 7.4002(c) ("Charges and fees that are 'interest' within the meaning of [the NBA] are governed by § 7.4001 and not by this section."). In classifying the bank's excess overdraft charges as "deposit account service charges," OCC necessarily rejected the conclusion that those charges were "interest."

Second, Fawcett argues that OCC has advanced internally inconsistent interpretations of "interest." She points to OCC's

_____

whether Auer should be overruled. At present, however, Auer remains binding precedent and we apply it as such.

- 10 -

2001 statement that, in some factual scenarios, "[a] bank that pays a check drawn against insufficient funds may be viewed as having extended credit to the accountholder."  66 Fed. Reg. at 8180.  This does not at all contradict OCC's later conclusion that, in cases like this one, a flat excess overdraft charge does not constitute "interest."

And third, Fawcett appears to argue we should not defer to OCC's definition of "interest" in 12 C.F.R. § 7.4001 because that definition simply paraphrases language from the NBA.  Smiley, in which the Supreme Court deferred to OCC's definition of "interest" in 12 C.F.R. § 7.4001, forecloses this argument.  See 517 U.S. at 739.

Because OCC's interpretation in Interpretive Letter 1082 is "consistent with the regulatory text" and not plainly erroneous, Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 208 (2011), and because there is no alternative reason to withhold deference, we give it deference.

B.

Even absent Auer deference, OCC's interpretation is due "a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'"  Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 159 (2012) (quoting United

States v. Mead Corp., 533 U.S. 218, 228 (2001)). The most salient of those factors is the validity of OCC's reasoning. See Doe v. Leavitt, 552 F.3d 75, 82 (1st Cir. 2009).

OCC found that the overdraft fees described to it, including the flat dollar amount excess overdraft fees, were deposit account service charges. Those fees compensate the bank for services "directly connected with the maintenance of a deposit account." 2007 WL 5393636, at *4. And those are services "that -- pursuant to [the bank's] deposit agreement with the accountholder -- the accountholder has agreed to pay for." Id. OCC's conclusion, on the facts here, is persuasive for at least four reasons: Flat excess overdraft fees (1) arise from the terms of a bank's deposit account agreement with its customers, (2) are connected to deposit account services, (3) lack the hallmarks of an extension of credit, and (4) do not operate like conventional interest charges.

First, flat excess overdraft fees arise from the terms of a bank's deposit account agreement with its customers. Even before Interpretive Letter 1082, the Eleventh Circuit considered this relevant to whether a charge should be classified as a deposit account service charge. See Video Trax, Inc. v. NationsBank, N.A., 33 F. Supp. 2d 1041, 1050 (S.D. Fla. 1998), aff'd, 205 F.3d 1358 (11th Cir. 2000).

Second, flat excess overdraft fees compensate a bank for its deposit account services.  For instance, such excess overdraft fees may compensate a bank for the service of continuing to hold open an overdrawn checking account.  See 12 C.F.R. § 7.4002(a) (stating that a bank "may charge its customers non-interest charges and fees").  And they may cover the costs incurred in providing this service, such as costs associated with additional monitoring to protect the bank against losses from a deposit accountholder who fails to remedy her overdrawn account.  See 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005) (noting that banks "should monitor [overdrawn] accounts on an ongoing basis"); cf. 12 C.F.R. § 7.4002(b)(2)(iv) (stating that a bank must consider, among other things, its "safety and soundness" when setting a non-interest charge).  Flat excess overdraft fees may also advance a bank's compliance with "safe and sound banking principles," id. § 7.4002(b)(2), by, for example, deterring customers from misusing those services, id. § 7.4002(b)(2)(ii).

Fawcett argues that a flat excess overdraft fee like Citizens Bank's "Sustained Overdraft Fee" is not associated with the provision of any deposit account service, but "is more of a charge in consideration for the time value of money," citing to Farrell v. Bank of Am., N.A., 224 F. Supp. 3d 1016, 1020-21 (S.D. Cal. 2016).  The preceding discussion amply counters this claim.

- 13 -

Third, flat excess overdraft fees lack the hallmarks of an extension of credit.  Overdraft transactions do not involve a customer reaching out to the bank to borrow money.  And there is no underwriting here -- Citizens Bank, under its deposit account agreement, honors the overdraft on the same terms for all its customers.  These features separate flat excess overdraft fees like Citizens Bank's "Sustained Overdraft Fees" from interest charges like "late fees" that are "connected with credit extension" and "[p]ayment[s] compensating a creditor . . . for an extension of credit."  12 C.F.R. § 7.4001(a).

And fourth, flat excess overdraft fees do not operate like conventional "interest" charges.  A conventional interest charge involves the application of an established rate to the principal balance.  But the "Sustained Overdraft Fees" here are each $30 regardless of the amount of the negative balance of the overdrawn account.

Fawcett argues that some "interest" charges could nonetheless have a flat amount as opposed to being a rate attached to an amount owed.  She cites Smiley, in which the Supreme Court noted that there was "no indication" that the NBA's definition of interest "was limited to charges expressed as a function of time or of amount owing."  517 U.S. at 745.  But the fact that some flat fees may be "interest" is no proof that it is invalid for OCC to classify the flat fees here as something other than "interest."

- 14 -

And in Smiley, the Court considered flat late fees applied to holders of credit card accounts, not deposit accounts.  See id.

We find OCC's reasoning persuasive and hold that Citizens Bank's "Sustained Overdraft Fees" are "deposit account service charges," not interest.

C.

Fawcett makes an argument that, in her view, "the economic reality of banks paying overdrafts" is that the bank is in fact extending credit to its checking account customers.  In support of this proposition, she points to language in the "Joint Guidance on Overdraft Protection Programs" that "[w]hen overdrafts are paid, credit is extended."  70 Fed. Reg. at 9129.  The Joint Guidance was issued in 2005 by four federal bank regulators: the OCC, the Board of Governors of the Federal Reserve, the Federal Deposit Insurance Corporation, and the National Credit Union Administration.  Of those four agencies, only OCC is charged with the responsibility of interpreting and administering the NBA.

The statement in the Joint Guidance is inapplicable here for several reasons, of which we give a few.  First, the Joint Guidance was not meant to provide OCC's interpretation of the NBA, nor does it purport to do that.  The Joint Guidance's purpose was to "assist" a variety of "insured depository institutions in the responsible disclosure and administration of overdraft protection services."  70 Fed. Reg. at 9127.  Second, the Joint Guidance (from

- 15 -

2005) predates Interpretive Letter 1082 (from 2007), and so is not OCC's last word on overdraft programs or on flat excess overdraft fees. And third, the statement that "[w]hen overdrafts are paid, credit is extended" appears in a section of the Joint Guidance entitled "Safety and Soundness Considerations." Id. at 9129. That section warns that overdraft protection programs "may expose an institution to more credit risk (e.g., higher delinquencies and losses)." Id. In context, then, the statement is meant only to acknowledge that if a bank honors an overdraft and the checking account customer does not replenish her account, the bank will have to charge off the negative balance, which may pose a "credit risk" to the institution. Id.

### D.

Fawcett's argument, adopted by the dissent, that the district court erred in not allowing discovery fails. The dissent says that Fawcett should be allowed to probe "the rationales and factual basis for Citizens Bank's 'Sustained Overdraft Fees.'" But Congress entrusted OCC, not inexpert federal judges, with interpreting "the meaning of the banking laws." Smiley, 517 U.S. at 739. The dissent's case-by-case approach would upend this order, at a cost to the clarity needed by the financial industry.

OCC's guidance forecloses this approach. This appeal concerns a pure question of law and does not turn on discovery.

- 16 -

*   *   *

We hold only that flat excess overdraft fees like Citizens Bank's "Sustained Overdraft Fees" are not "interest" under the NBA.

Citizens Bank urges a broad ruling that "<u>no</u> fee connected to the overdraft is interest under § 7.4001." The bank argues that regulatory history establishes this proposition. We decline to take such a sweeping approach, given that the considerations surrounding overdraft fees are, in OCC's words, "complex and fact-specific," and because we need not adopt such a position to resolve this case. When "it is not necessary to decide more, it is necessary not to decide more." <u>PDK Labs. Inc.</u> v. <u>U.S. D.E.A.</u>, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

III.

We affirm.


**-Dissenting Opinion Follows-**

- 17 -

**LIPEZ**, **Circuit Judge**, **dissenting.** Although I acknowledge that this is a close case, I cannot agree with my colleagues that Barbara Fawcett's complaint should be dismissed as a matter of law for failure to state a claim. Fawcett insists that, at a minimum, she is entitled to seek information about the rationales and factual basis for Citizens Bank's "Sustained Overdraft Fees." I agree. Accordingly, I respectfully dissent.

Fawcett wisely does not challenge the OCC's well-established view that, under 12 C.F.R. § 7.4001(a), the fee imposed when a checking account is first overdrawn is a service charge rather than interest at least where, as here, the overdraft fee does not exceed the returned check fee.[7] Rather, she challenges the bank's sustained fees, which are charged over the course of ten days if an account remains overdrawn. Those fees unquestionably relate to the accountholder's continuing "use" of the bank's money over time -- a service for which banks ordinarily charge interest. Fawcett thus argues that the OCC's treatment of initial overdraft fees does not support dismissal of her complaint challenging the sustained fees assessed against her.

---

[7] Citizens Bank's initial "Overdraft Fee" and its "Returned Item Fee" is the same -- $35. When the charge stemming from an overdraft does not differ depending on whether the bank advances funds to the accountholder or refuses to do so, the fee is plainly for an account service (handling the overdraft) and not for the de facto "credit" given to the customer whose debit is paid despite her inadequate funds.

Fawcett's reasoning draws support from both the OCC's and Citizens Bank's depiction of typical overdraft practices. The OCC has described a bank's payment of checks drawn on insufficient funds as largely a bookkeeping accommodation for its customers: "Where a customer creates debits on his or her account for amounts in excess of the funds available in that account, a bank may elect to honor the overdraft and then recover the overdraft amount as part of its posting of items and clearing of the depositor's account." OCC Interpretive Letter No. 1082, 2007 WL 5393636, at *2 (May 17, 2007). At oral argument before our court, Citizens Bank similarly explained that, in the ordinary case, banks providing overdraft coverage at their discretion are merely resequencing accountholder deposits and withdrawals that will soon balance out. The resequencing characterization becomes increasingly inapt, however, when an accountholder's deposits do not quickly cure the overdraft. That is, as the days pass without offsetting deposits, the overdraft coverage looks more and more like a short-term loan. Borrowers typically pay for loans in the form of interest; hence, Fawcett's theory that the sustained overdraft charges for delayed payment are in effect interest has traction.

My colleagues hold that Interpretive Letter 1082 conclusively forecloses characterizing Citizens Bank's Sustained Overdraft Fees as interest, pointing to the Letter's footnote 3 as

proof that the OCC has deemed "the precise practice here . . . lawful." Maj. Op. at II.A.  In footnote 3, the OCC reports that the bank whose inquiry prompted the Letter imposes initial overdraft fees of $23 or $34, depending on the frequency of overdrafts, and "also may charge a Continuous Overdraft Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn."  2007 WL 5393636, at *1 n.3 (emphasis added).  Nowhere else in the Letter, however, does the OCC make specific reference to the continuous charges, and the Letter contains no analysis of whether those fees constitute interest.

To understand the significance of the footnote, it is important to recognize what the OCC was specifically addressing in the Letter.  The Letter responded to questions posed by an unnamed bank that had been sued by plaintiffs who claimed the bank "may not recover overdraft amounts and fees owed on an account from public benefits payments deposited in that same account by a California depositor."  Id. at *2.  The bank asked whether it could "honor items for which there are insufficient funds in depositors' accounts," recover the overdraft amounts as part of its "routine maintenance of these accounts," and deduct "overdraft fees from depositors' accounts for doing so."  Id. at *1.  The bank also sought confirmation that its overdraft practices did not trigger

- 20 -

OCC regulations involving the application of "state law to a national bank's deposit-taking activities."  Id.

I cannot conclude that the OCC, in responding to these questions and making only a passing descriptive reference to the bank's continuous overdraft charges, decided sub silentio the important issue of whether such fees constitute interest.  To reach that conclusion, we must disregard the OCC's own observations in 2001, when it revisited the definition of "interest" for purposes of 12 C.F.R. § 7.001(a).

At that time, the OCC recognized that "[a] bank that pays a check drawn against insufficient funds may be viewed as having extended credit to the accountholder."  66 Fed. Reg. 8178-02, 8180, 2001 WL 68132 (Jan. 30, 2001).  In other words, even from the outset, a bank's payment of a "not sufficient funds" ("NSF") check reasonably could have been characterized as a loan to its accountholder, with the related fees properly classified as interest.  The agency, however, adhered to its prior view that the initial overdraft transaction is not an extension of credit, and, accordingly, the fee imposed should not be treated categorically as interest under § 7001(a).  Importantly, however, the OCC did not reject classifying some "portion of a charge imposed in connection with paying an overdraft" as interest.  66 Fed. Reg. 34784-01, 2001 WL 731640, at *34787 (July 2, 2001).  In fact, the OCC declined to decide whether the portion of such a fee that

exceeds the amount charged when the bank <u>refuses</u> payment may constitute interest, noting that resolving this question involves "complex and fact-specific concerns." <u>Id.</u>

Interpretive Letter 1082, which was issued six years later, simply does not resolve the issue. The OCC was not specifically asked to consider, and the Letter does not purport to address, whether any charges exceeding a returned check fee -- which would include the "sustained" fees at issue here -- constitute interest. To be sure, it is possible that the OCC's cursory reference to the continuous charges means that it saw no obvious or material distinction between the initial and subsequent fees. Silence, however, is not guidance, and we would thus need to infer a ruling on a debated issue from between the lines of the Letter. I do not see how we can defer to an interpretation that the OCC never clearly made on an issue that it previously described as complex and fact-specific.

Nor do I believe the other reasons articulated by the majority permit us to conclude that Fawcett has failed to plausibly plead that Citizens Bank's sustained overdraft fees may be interest charges. It is irrelevant that the "Sustained Overdraft Fees" are limited in number and duration -- specifically, three charges over ten days -- and therefore do not resemble classic interest charges. The Supreme Court has expressly rejected the notion that charges that "do not vary based on the payment owed or the time period of

delay" cannot constitute interest. Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 745 (1996) (internal quotation marks omitted). In addition, although the sustained fees may reflect payments for services related to monitoring and maintaining the overdrawn account, see Maj. Op. at II.B, the majority's speculation about such services does not justify discrediting the alternative possibility that the fees are instead designed to deter late payment and, as "late fees," constitute interest. See 12 C.F.R. § 7.4001(a) (listing "late fees" as within "[t]he term 'interest' as used in 12 U.S.C. § 85").

Likewise, while I agree that it is significant that Citizens Bank's discretionary decision to fund, or not, its customers' overdrafts lacks the ordinary hallmark of a lender-debtor relationship, see Maj. Op. at II.B, the bank's unilateral choice to honor or reject an NSF check does not foreclose a different relationship once a customer has failed to repay the "loan" via the intended short-term resequencing of credits and debits. Indeed, an accountholder's failure to promptly cure the overdraft inevitably puts the bank and its customer on different footing and allows for the possibility that the ongoing overdraft charges could constitute interest.

Although the classification of Citizens Bank's Sustained Overdraft Fees is a question of law, the answer -- as the OCC acknowledged in 2001 -- could depend on the facts Fawcett seeks to

obtain through discovery. Given that the OCC has declined to answer that classification question, it is properly our role to determine the nature of the fees here based on all relevant facts. Simply put, we should not be deciding as a matter of law, based solely on the complaint, the "complex and fact-specific" issues concerning Citizens Bank's sustained fees. 2001 WL 731640, at *34787.

I therefore respectfully dissent from my colleagues' decision to affirm the dismissal of Fawcett's complaint.