# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 29, 2021

Lyle W. Cayce
Clerk

No. 18-11375

S*haronda* L. J*ohnson*, *on behalf of herself and all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

BOKF N*ational* A*ssociation*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-663

Before H*igginbotham*, D*ennis*, and H*o*,[*] *Circuit Judges*.

J*ames* L. D*ennis*, *Circuit Judge*:

Plaintiff Sharonda Johnson, who holds a checking account with BOKF, National Association ("BOKF" or "the Bank"), filed this putative class action challenging "Extended Overdraft Charges" assessed by BOKF. Extended Overdraft Charges are what the Bank terms the fees it charges to customers who overdraw on their checking accounts and fail to timely pay the Bank for covering the overdraft. Johnson alleges that when the Bank paid

---

[*] Judge Ho concurring in judgment only.

her overdraft, it extended her credit.  Next, Johnson argues that the Extended Overdraft Charges BOKF assessed her when she did not reimburse the Bank timely for covering her overdraft constitute interest upon this extension of credit.  Last, she contends that the Extended Overdraft Charges were usurious in violation of § 85 of the National Bank Act of 1864, 12 U.S.C. § 1 *et seq.*

The district court concluded that these Extended Overdraft Charges were not "interest" under the Act and, accordingly, dismissed the action for failure to state a claim.  For the reasons that follow, we AFFIRM.

## I.
## A.

The National Bank Act of 1864 ("NBA" or "the Act") governs the business activities of national banks like BOKF.  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007).  Enacted in 1864, the NBA is intended to protect national banks against intrusive regulation by the states and facilitate a national banking system.  *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002).  National banks are also subject to regulation by the Office of the Comptroller of the Currency ("OCC"), the agency charged by Congress with implementing the NBA.  *Watters*, 550 U.S. at 6.

As relevant here, the NBA authorizes national banks to charge "interest at the rate allowed by the laws of the State . . . where the bank is located."  12 U.S.C. § 85.  The statute does not define the term "interest," and the Supreme Court has held that this statutory term is ambiguous and that courts should therefore defer to OCC's interpretation of the word, *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 739 (1996) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984)).

In regulations promulgated through notice-and-comment rulemaking, OCC issued 12 C.F.R. § 7.4001(a), which defines the term "interest" as it is

No. 18-11375

used in § 85 of the NBA to mean "any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." 12 C.F.R. § 7.4001(a). This includes, *inter alia*, "late fees" and "creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds." *Id.* When a bank assesses interest fees, it may only "charge interest at the maximum rate permitted . . . by the law of that state." *Id.* § 7.4001(b). This maximum interest rate is referred to as the "usury limit." *Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133, 135 (1st Cir.), *cert. denied*, 140 S. Ct. 224 (2019); *see also M. Nahas & Co., Inc. v. First Nat. Bank of Hot Springs*, 930 F.2d 608, 610 (8th Cir. 1991) (using same term). Under the NBA, a bank customer who is charged interest exceeding the usury limit may recover "twice the amount of the interest paid." 12 U.S.C. § 86.

Non-interest charges and fees, however, are not subject to OCC's usury limits. *See* 12 C.F.R. § 7.4002. These non-interest charges include fees for what are broadly referred to as "deposit account services." *Id.* § 7.4002(a). Banks have discretion to impose deposit account services fees and other non-interest charges on their account holders, such as the bank's checking account customers, so long as the bank acts within the bounds of "sound banking judgment and safe and sound banking principles." *Id.* § 7.4002(b)(2).

In 2001, OCC further clarified its definition of "interest." Though the agency left in place its regulation stating that "interest" includes late fees and NSF charges that a bank assesses when a borrower tenders a bad check *to the bank*, it stated that "overdraft and returned check charges" imposed by a bank on its *own* checking account customers were not interest within the meaning of § 7.4001(a), but rather charges for "deposit account services" that fall under 12 C.F.R. § 7.4002. INVESTMENT SECURITIES; BANK

No. 18-11375

ACTIVITIES AND OPERATIONS; LEASING 66 FED. REG. 8178, 8180 (Jan. 30, 2001). OCC noted, however, that its regulations did not expressly resolve whether interest includes "at least some portion of the fee imposed by a national bank when it pays a check notwithstanding that its customer's account contains insufficient funds to cover the check." *Id.* at 8180. "A bank that pays a check drawn against insufficient funds may be viewed as having extended credit to the accountholder," the agency observed. *Id.* Accordingly, OCC invited comment on this matter.

Following notice-and-comment, OCC published its Final Rule, 66 FED. REG. 34784 *et seq.* (July 2, 2001). OCC noted that it had "received numerous comments" regarding whether the regulation defining interest should include "any portion of the fee imposed by a national bank when it pays an overdraft." *Id.* at 34787. However, OCC declined to amend the rule to address this issue given the "complex and fact-specific concerns" involved in determining whether "any portion of a charge imposed in connection with paying an overdraft constitutes 'interest'" under the NBA. *Id.*

In 2007, OCC issued Interpretive Letter 1082, squarely addressing for the first time whether fees charged by a Bank in connection with paying an overdraft may qualify as "interest" under the NBA. OFFICE OF THE COMPTROLLER OF THE CURRENCY, Interpretive Letter No. 1082, 2007 WL 5393636, at *1 (May 17, 2007) [hereinafter INTERPRETIVE LETTER 1082]. Interpretive Letter 1082 was a response by OCC to an unnamed bank that described its overdraft fee structure to OCC and asked the agency whether, under the NBA and OCC's regulations, it could "(1) in its discretion, honor items for which there are insufficient funds in depositors' accounts and recover the resulting overdraft amounts as part of the Bank's routine maintenance of these accounts; and (2) establish, charge and recover overdraft fees from depositors' accounts for doing so." *Id.* at *1. The bank

seeking guidance imposed a "Continuous Overdraft Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn." *Id.* at *1 n.3. OCC concluded that the bank's practices complied with the NBA and the OCC's regulations interpreting the NBA. *Id.* at *1. Despite its earlier reservations, OCC asserted that "[c]reating and recovering overdrafts have long been recognized as elements of the discretionary *deposit account services* that banks provide." *Id.* at *2 (emphasis added). OCC further specified that the bank's authority to charge a fee when it pays an overdraft is expressly provided for in 12 C.F.R. § 7.4002(a), which concerns non-interest charges and fees like deposit account service charges. *Id.*

## B.

BOKF is a national bank that offers, *inter alia*, checking account services to its customers. Pursuant to the Bank's deposit account agreement, when a BOKF customer overdraws her account, BOKF may either: "(1) refuse to pay the item" and charge a "returned item fee" or (2) elect to pay the item" and charge an initial overdraft fee. The returned item fee and initial overdraft fee are both $32.50. Thus, any time a customer overdraws on her checking account—irrespective of whether the Bank chooses to cover its customers' overdraft—the Bank imposes the same fee on its customer. If the Bank opts to pay the overdraft, the customer has up to five consecutive business days to repay the Bank the total of the amount of the overdraft and the initial overdraft fee. If the customer fails to do so within the applicable timeframe, the Bank charges an "Extended Overdraft Charge" of $6.50 per business day until the overdraft is cured.[2]

---

[2] Other banks refer to the same type of fees as "Sustained Overdraft Fees" or "Continuous Overdraft Charges." *See Fawcett*, 919 F.3d at 136 (describing the "Sustained Overdraft Fees" charged by the bank in that case when it honors an overdraft; the bank

No. 18-11375

## C.

Plaintiff Sharonda Johnson had a checking account with BOKF that was governed by the terms of the Bank's deposit account agreement. In 2016, Johnson overdrew on her checking account. The Bank elected to cover her overdraft and assessed Johnson the initial overdraft fee of $32.50. When Johnson's account remained overdrawn after five consecutive business days, BOKF assessed Johnson Extended Overdraft Charges of $6.50 per business day until Johnson cured the overdraft. At one point in 2016, Johnson's account was overdrawn for seven business days following the expiration of the five-business-day grace period, resulting in BOKF charging Johnson a total of $45.50 in Extended Overdraft Charges.

Johnson filed this putative class action, alleging that the Bank's Extended Overdraft Charges constitute "interest" within the meaning of the NBA because the fees compensate the Bank "for [the] use or forbearance of money or as damages for its detention"  Because the Extended Overdraft Charges are interest under the Act, they are subject to the usury limit in § 85 of the Act, according to Johnson. Johnson alleges that the $6.50-per-day Extended Overdraft Charges exceeds the maximum interest that BOKF can charge its customers under the state law incorporated by NBA§ 85, which in her case was 6% per year.

In 2018, the district court dismissed Johnson's action for failure to state a claim. Citing a number of district court decisions, the district court

---

charges a "'Sustained Overdraft Fee' three times: $30 four business days after the overdraft, another $30 after seven business days, and a final $30 after ten business days"); Interpretive Letter 1082 *1 n.3 (discussing the "Continuous Overdraft Charges" assessed by a bank that covered its customers' overdraft; the bank charged "$5 per business day from the fourth through eleventh calendar day that an account is overdrawn"). Consistent with how the deposit account agreement between the Bank and Johnson characterizes these charges, we refer to them as "Extended Overdraft Charges."

reasoned that BOKF does not make a loan to a customer when it covers the customer's overdraft; therefore, the NBA's limitations on interest charges do not apply. Johnson timely appealed.

## II.

We review *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## III.

Johnson's argument on appeal proceeds in two steps. First, she contends that the Bank makes a "loan" under § 85 of the NBA when it pays an overdraft on a customer's deposit account. Second, she argues that the Extended Overdraft Charges the Bank charges a customer who fails to timely pay back the overdraft are "interest" on that loan within the meaning of § 85 of the NBA. It is undisputed that, if it is interest, the rate the Bank charges exceeds the applicable usury limits.

We reject Johnson's argument. Instead, we defer to the OCC's interpretation that the Extended Overdraft Charges are not interest within the meaning of the NBA.

## A.

In Interpretive Letter 1082, OCC determined that the overdraft fees imposed by the bank seeking guidance constituted charges for non-interest deposit account services under 12 C.F.R. § 7.4002(a). INTERPRETIVE LETTER 1082 at *1-*2. There, the bank charged a "Continuous Overdraft

Fee" similar to the Extended Overdraft Charges that BOKF allegedly charged Johnson after she failed to cure her overdraft within five business days. *Id.* at n.3. We must decide, then, whether OCC's conclusion that these sort of Extended Overdraft Charges are a "deposit account service charge[]" under 12 C.F.R. § 7.4002(a), and therefore not interest under § 7.4001(a), is entitled to deference.

The Supreme Court recently reaffirmed that courts should defer to an agency's reasonable interpretation of its own regulations when the regulation's text is "genuinely ambiguous," and the "character and context of the agency's interpretation entitles it to controlling weight." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414, 2416 (2019). When applicable, this deference regime, referred to as *Auer* deference, dictates that an agency's interpretation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 453, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). *Auer* deference rests on the presumption that "the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991).

We heed the Supreme Court's admonition that courts must "exhaust[] all the traditional tools of construction" before determining that a regulation is genuinely ambiguous and hence may be accorded *Auer* deference. *Kisor*, 139 S. Ct. at 2412415 (quoting *Chevron*, 467 U.S. at 843 n. 9). Courts must "carefully consider the text, structure, history, and purpose of a regulation." *Id.* Engaging in this rigorous inquiry, we conclude that the regulations at issue here, §§ 7.4001(a) & 7.4002—which define "interest" and non-interest charges under the NBA, respectively—are genuinely ambiguous.

No. 18-11375

Under OCC's regulations, a charge can either be interest under § 7.4001(a) or a non-interest charge under § 7.4002. *Fawcett*, 919 F.3d at 138 (citing 12 C.F.R. §§ 7.4002(a), (c)).  OCC itself has acknowledged that the text of § 7.4001(a) is ambiguous; in promulgating its Final Rule in 2001, the agency expressly stated that there was "ambiguity about the scope of the term [NSF fees] as used in § 7.4001(a)."     66 FED. REG. at 34786. Moreover, OCC, as noted above, invited and "received numerous comments" on whether a bank charges "interest" within the meaning of the NBA when it pays a check even though its customer's account lacks sufficient funds. *Id.* at 34747.  The majority of comments opposed including such fees within § 7.4001(a)'s definition of interest.     Yet, despite the extensive discussion the notice-and-comment period generated, OCC expressly declined to amend the text of § 7.4001(a) to clarify whether the regulation reached these charges. *Id.*

Explaining its decision, OCC stated that determining whether any portion of overdraft charges or fees constitute interest necessarily implicates "complex and fact-specific concerns." *Id.*  Thus, the history of § 7.4001(a) supports the conclusion that it is truly ambiguous as to whether excess overdraft fees like the ones here fall within its scope.  Similarly, neither the structure of the regulation nor its purpose illuminate whether § 7.4001(a) embraces excess overdraft fees.  In sum, we are persuaded that § 7.4001(a), the regulation defining fees constituting interest under the NBA, is genuinely ambiguous.  And because § 7.4001(a) is ambiguous, it is necessarily so that § 7.4002, which covers all non-interest charges, is likewise ambiguous.  That is so because the two regulations together cover all possible charges; if there is any lack of clarity as to whether a fee charged by a bank qualifies as interest under § 7.4001(a), then logic dictates that it is just as uncertain whether that fee is more properly classified as a non-interest charge under §7.4002. *See Fawcett*, 919 F.3d at 138.

No. 18-11375

In addition to the requirement that the regulation be genuinely ambiguous, *Auer* deference is only merited when an agency's interpretation of its regulation is "reasonable." *Kisor*, 139 S. Ct. at 2415 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994)).  We conclude that OCC's determination in Interpretive Letter 1082 that "Continuous Overdraft Fees" are classified as deposit account services under § 7.4002—and therefore not as interest under § 7.4001(a)—is reasonable, and indeed, Johnson does not argue otherwise.  After all, OCC's position is consonant with the majority view on the subject based on the public comment submissions.[3]

But, aside from OCC's interpretation being reasonable, we must also inquire "whether the character and context of the agency interpretation entitles it to controlling weight." *Kisor*, 139 S. Ct. at 2416.  Although there is no "exhaustive test" on this point, the Supreme Court has laid out three

---

[3] Johnson makes a passing argument that Interpretive Letter 1082 does not interpret interest under § 7.4001(a) because it does not expressly mention that regulation and instead discusses only whether Extended Overdraft Charges are charges and fees under § 7.4002.  We agree with the First Circuit that this contention

> [i]s a non-starter.  The bank [to which Letter 1082 responded] asked for OCC's guidance "under the 'National Bank Act and [OCC] regulations."
> . . . And under OCC's regulations, a charge is either "interest" or it is a "non-interest charge[]," which includes "deposit account service charges."  12 C.F.R. § 7.4002(a); *see id.* § 7.4002(c) ("Charges and fees that are 'interest' within the meaning of [the NBA] are governed by § 7.4001 and not by this section.").  In classifying the bank's excess overdraft charges as "deposit account service charges," OCC necessarily rejected the conclusion that those charges were "interest."

*Fawcett*, 919 F.3d at 138.  Similarly, Johnson's argument that § 7.4002 is "irrelevant" to determining whether the Extended Overdraft Charges constitute "interest" under § 7.4001(a) is unavailing because OCC's determination that these charges are "deposit account service charges" under § 7.4002 necessarily means that they cannot be "interest" under § 7.4001(a).  *See* 12 C.F.R. § 7.4002(a) (stating that "charges and fees that are 'interest' . . . are governed by § 7.4001 and not by this section").

"especially important markers" for determining if an agency's regulatory interpretation commands *Auer* deference: (1) whether the agency's interpretation reflects the agency's "authoritative" or "official position"; (2) whether "the agency's interpretation implicates its substantive expertise"; and (3) whether the agency's construction is rooted in its "fair and considered judgment." *Id.* at 2416-17 (internal quotation marks omitted).

First, Interpretive Letter 1082 appears to be an authoritative statement rather than a "m[e]re ad hoc statement not reflecting the agency's views." *Id.* at 2416. The letter was drafted by a senior OCC official, the agency's First Senior Deputy Comptroller and Chief Counsel. *See id.* (observing that the Court has deferred to "official staff memoranda . . . even though never approved by the agency head" (quoting *Ford Motor Credit v. Milhollin*, 444 U.S. 555, 566 n.9 & 567 n.10 (1980))); *see also Ford Motor Credit*, 444 U.S. at 566 n.9 (declining to "draw a radical distinction between" agency heads and staff for *Auer* deference). Moreover, the content of Letter 1082 strongly indicates that it represents OCC's official position on the matter of whether Extended Overdraft Charges should be classified as non-interest charges. It was written in response to a bank's request for OCC's guidance "under the National Bank Act and [OCC] regulations." *See* Interpretive Letter 1082, at \*1. And more to the point, Letter 1082 provides the agency's views on the permissibility of overdraft fees, expressly notes that the bank that asked for guidance charged Extended Overdraft Charges, and describes these fees as constituting non-interest charges under § 7.4002(a). *See id.* at \*1-\*2 & \*1 n.3. In short, Letter 1082 bears the hallmarks of an official interpretation by OCC.[4]

---

[4] Though not dispositive of our decision here, we note that we have applied *Auer* deference in the past to OCC interpretive letters. *See Wells Fargo Bank of Tex. NA v. James*,

No. 18-11375

OCC's interpretation of §§ 7.4001(a) and 7.4002 also falls squarely within the agency's substantive expertise. As noted above, OCC is administering the NBA and regulations promulgated thereunder. *Watters*, 550 U.S. at 6. And Interpretive Letter 1082 reflects OCC's "fair and considered judgment." *Kisor*, 139 S. Ct. at 2417. There is no indication that the interpretive letter was merely a "convenient litigating position" or "*post hoc* rationalization advanced to defend past agency action against attack." *Id.* (internal quotation marks omitted). Nor does Johnson contend that the agency's position on Extended Overdraft Charges as articulated in Letter 1082 "creates unfair surprise to regulated parties," *id.* Indeed, Letter 1082 appears aimed at providing assurance to regulated parties—that is, national banks—about the permissibility of Extended Overdraft Charges and to give fair notice that such fees are classified as non-interest charges under § 7.4002. *Id.* (internal quotation marks omitted).

In sum, Interpretive Letter 1082 represents OCC's reasonable interpretation of genuinely ambiguous regulations that it is charged with administering. The agency's position on fees like the Extended Overdraft Charges here is neither plainly erroneous nor inconsistent with the regulations it interprets, §§ 7.4001(a) & 7.4002. OCC's interpretation also satisfies each of the three "especially important markers" that guide courts in determining if an agency's interpretation of its regulation warrants *Auer* deference. *Kisor*, 139 S. Ct. at 2416-17. Accordingly, deference to OCC's interpretation of these regulations is appropriate, and the agency's determination in Interpretive Letter 1082 that the type of bank fees at issue here—that BOKF refers to as Extended Overdraft Charges—are non-interest charges is a sufficient basis to resolve this case. Because Extended

---

321 F.3d 488, 494-95 (5th Cir. 2003) (deferring under *Auer* to a position OCC advanced in agency interpretive letters).

No. 18-11375

Overdraft Charges are non-interest charges, they are not subject to the NBA's usury limits.

**B.**

Johnson also contends that the district court erred in dismissing her complaint because she should have been allowed discovery on disputed issues of fact. Initially, we note that Johnson already availed herself of the opportunity the district court provided to conduct discovery. More important, applying Federal Rule of Civil Procedure 8(a)'s pleading standard and taking as true Johnson's well-pleaded facts, we have concluded that she has failed to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And "[t]o get to discovery, [Johnson] must allege sufficient facts in h[er] complaint to state a plausible claim for relief. 'Because [Johnson's] complaint is deficient under Rule 8, [s]he is not entitled to discovery, cabined or otherwise.'" *Jackson v. City of Hearne*, 959 F.3d 194, 202 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

**IV.**

For these reasons, we AFFIRM the judgment of the district court.