# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2022

Lyle W. Cayce
Clerk

No. 21-30723

PS Business Management, L.L.C.; CJA Nola Realty, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Fireman's Fund Insurance Company,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1229

_____

Before Richman, *Chief Judge*, and Ho and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

PS Business Management and CJA Nola Realty (collectively, "Plaintiffs") sued their commercial property insurer to recover the financial

_____

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

losses they suffered as a consequence of the COVID-19 pandemic. The district court dismissed their complaint for failure to state a claim. We affirm.

## I.

PS Business Management has offices in three states and provides business consulting services to entertainment professionals. CJA Nola Realty manages PS Business Management's New Orleans office. Like many businesses, Plaintiffs suffered losses as a consequence of the COVID-19 pandemic.

Both companies filed a claim with their insurers, including Fireman's Fund Insurance Company and Allianz Global Risk, to recover those losses under various provisions of their commercial property insurance policy. Plaintiffs' policy includes a communicable disease provision that establishes coverage for certain specified losses if there has been a qualifying "communicable disease event." Coverage under all other relevant provisions of the policy is triggered by "direct physical loss or damage" to the property.

After Plaintiffs' claim for coverage was denied, they brought this action in Louisiana state court against Fireman's Fund, Allianz Global Risk, and Allianz Global Corporate & Specialty, SE "for damages and asserting bad faith in the denial of coverage." Defendants removed the action to federal court on diversity grounds, and Plaintiffs voluntarily dismissed the Allianz defendants from the action.

Fireman's Fund, the sole remaining defendant, moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion after concluding that the communicable disease coverage provision did not apply and that, by requiring "direct physical loss or damage," the remaining policy provisions

No. 21-30723

unambiguously excluded "alleged losses that are intangible or incorporeal." Plaintiffs timely appealed.

## II.

We review a district court's dismissal de novo. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). "Similarly, the interpretation of an insurance policy is a question of law that we review de novo." *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 337 (5th Cir. 2020). "To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021) (quotations omitted). "The court accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *Id.*

## III.

"In diversity cases, we apply the law of the forum state to determine which state's law applies." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). This action was brought in Louisiana, and "[u]nder Louisiana's choice-of-law rules, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014).

The parties agree that, under Louisiana's choice of law rules, "New York law likely applies." But they also agree that "relevant New York and Louisiana law does not appear to conflict." *See Rainbow USA, Inc. v. Nutmeg Ins. Co.*, 612 F. Supp. 2d 716, 725–27 (E.D. La. 2009) (outlining how Louisiana and New York law are similar with respect to interpreting insurance contracts).

Our court has "held . . . that if the laws of the states do not conflict, then no choice-of-law analysis is necessary, and we simply apply the law of the forum state." *Pioneer Expl.*, 767 F.3d at 512 (cleaned up). "Because we conclude that the substantive contract law of New York and Louisiana is in harmony" on the determinative issues in this appeal, "no choice of law analysis is necessary, and we apply Louisiana law." *Mumblow*, 401 F.3d at 621.

## A.

The parties agree that the key question here is whether, under the policy, "direct physical loss or damage" requires corporeal or tangible loss or damage to the insured property. It is undisputed that the policy does not define "direct physical loss or damage," and thus we must assess the phrase's "plain, ordinary and generally prevailing meaning." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." *Gorman v. City of Opelousas*, 148 So. 3d 888, 892 (La. 2014) (quotations omitted).

Plaintiffs contend that "direct physical loss or damage" encompasses "COVID-19 related issues" and "does not require physical damage." But in *Q Clothier New Orleans, L.L.C. v. Twin City Fire Insurance Co.*, we concluded that "the Louisiana Supreme Court would interpret 'direct physical loss of or damage to property' to cover only tangible alterations of, injuries to, and deprivations of property." 29 F.4th 252, 257 (5th Cir. 2022). *See also id.* at 260 ("[W]e conclude the plain and ordinary meaning of 'physical loss of or damage to property' is a tangible alteration to, injury to, or deprivation of property."). Indeed, as we noted in *Q Clothier*, "every other circuit court to interpret this language" in the COVID-19 context has

understood it that same way. *Id.* at 259. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456–57 (5th Cir. 2022) (collecting cases).[1]

Still, Plaintiffs contend that, at least with respect to *this* policy, construing "direct physical loss or damage" in such a manner would lead to "absurd results" in two respects. *See Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008) ("An insurance policy should not be interpreted in an unreasonable or a strained manner . . . so as to achieve an absurd conclusion.") (quotations omitted).

First, they note that "stock" is covered business personal property under the policy, with "stock" defined as the insured's "interest in labor, materials, or services furnished or arranged by [the insured] on personal property of others." Yet to recover, there must be "direct physical loss or damage," and if that means actual physical damage, Plaintiffs contend it would be impossible for any of "the non-physical items of stock contemplated by the policy" to be covered.

We disagree. Plaintiffs overlook that such intangible interests are covered under their policy only when they are "on [the] personal property of others." Thus, as the district court observed, the policy simply "covers the value of services embedded in someone else's property if that property is physically lost or damaged." This by no means makes it impossible for the intangible interests contemplated by the policy to be covered. For instance, the district court noted that "damage to a stadium before a show sponsored

---

[1] We also note that New York courts have "uniformly . . . den[ied] coverage under similar insurance provisions where the insured property itself was not alleged or shown to have suffered direct physical loss or physical damage." *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 221 (2nd Cir. 2021) (collecting cases).

No. 21-30723

by Plaintiffs might result in coverage of the value of services done by Plaintiffs' agents prior to the show."

Second, Plaintiffs contend that, under this definition of "direct physical loss or damage," coverage under the policy's communicable disease coverage provision would be "invalidate[d] . . . in all events" because it would only apply when the property "has gone through a distinct, demonstrable physical alteration." But Plaintiffs are mistaken. Unlike many of the policy's other coverage provisions, "direct physical loss or damage" is not what triggers communicable disease coverage. Instead, it is the occurrence of a "communicable disease event" under the policy. Once such an event occurs, the insured can recover for, among other things, the "necessary costs incurred to . . . [m]itigate, contain, remediate, clean, detoxify, [and] disinfect" the property.

**B.**

Plaintiffs contend that, even if "direct physical loss or damage" requires that there be a corporeal effect on the property, their claim for coverage survives because they've alleged that their property *was* physically damaged by COVID-19. More specifically, Plaintiffs emphasize their allegation that they "lost valuable merchandise, business records, and the property of certain clients as a result of COVID-19 contamination."

But Plaintiffs' complaint is devoid of allegations explaining how this property was—or could be—"lost" due to "COVID-19 contamination." *See Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) ("[W]e do not presume to be true . . . 'naked assertions devoid of further factual enhancement.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, as one of our sister circuits has observed, COVID-19 is "a virus that injures people, not property." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403 (6th Cir. 2021). *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint

6

No. 21-30723

states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense.").[2]  As such, Plaintiffs have not plausibly alleged that they are entitled to coverage under the provisions requiring "direct physical loss or damage."

## C.

Nevertheless, Plaintiffs assert that they are entitled to coverage pursuant to their policy's communicable disease coverage provision.  As we have noted, unlike the other relevant policy provisions, communicable disease coverage is not triggered by "direct physical loss or damage." Rather, the existence of a "communicable disease event" under the policy is what unlocks coverage.  Once such an event occurs, the insured can recover "for direct physical loss or damage" that is "caused by or resulting from [the] covered communicable disease event."  This includes the "necessary costs incurred to" (1) "[t]ear out and replace" property "in order to gain access to the communicable disease;" (2) "[r]epair or rebuild" property that "has been damaged or destroyed by the communicable disease;" and (3) "[m]itigate, contain, remediate, clean, detoxify, disinfect, neutralize,

---

[2] Plaintiffs have clarified in their briefing, both before the district court and on appeal, that this allegation in their complaint refers to "the required cleaning" of items contaminated with COVID-19.  They offer as examples "a shrunken shirt after [its] first washing," "a bumper sticker with curled edges due to" cleaning, and a cap that has "faded . . . due to the application of" a cleaning agent.  But even if we were to credit this clarification, it would simply confirm that Plaintiffs have not "allege[d] that the *virus* altered" their property directly. *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (noting COVID-19's "impact on physical property is inconsequential" because the virus "may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days").  This does not suffice under Plaintiffs' policy, which largely "requires direct physical loss or damage" for there to be coverage.

cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease."

However, the policy defines a "communicable disease event" as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." We agree with the district court that while "COVID-19 is undoubtedly a communicable disease within the meaning of the policy," Plaintiffs have failed to allege the existence of a qualifying "communicable disease event."

Plaintiffs resist this conclusion. While they appear to acknowledge that there was not "an order specific to the insured[] location," they stress that, because of the pandemic, various "[s]tate and local government authorities" imposed "restrictions on business operations" and restricted "access to their offices."

But that is not enough. Again, for there to be coverage under this provision, "a public health authority [must] order[] that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." Plaintiffs have not alleged that any public health order mandated that their premises "be evacuated, decontaminated, or disinfected," let alone that such an order was issued due to an "outbreak" at any of their offices. Accordingly, Plaintiffs have failed to plausibly allege that they are entitled to communicable disease coverage under their policy. *See Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 651–52 (6th Cir. 2021) (reaching same conclusion in case involving a similar communicable disease coverage provision).

## D.

That leaves Plaintiffs' claim that Fireman's Fund breached its duty of good faith and fair dealing under Louisiana Revised Statutes §§ 22:1973 and

22:1892 by denying coverage. But these provisions "do not provide a cause of action against an insurer absent a valid, underlying insurance claim." *Pelle v. Munos*, 296 So. 3d 14, 25 (La. Ct. App. 2020). *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 363 (5th Cir. 2010) (noting that, under Louisiana law, "[b]reach of contract is a condition precedent to recovery for the breach of the duty of good faith"). Because Plaintiffs have failed to plausibly allege that they are entitled to coverage, "the district court properly denied [their] claim for statutory penalties." *See Bayle*, 615 F.3d at 363.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.