CAJUN CONTI LLC, CAJUN CUISINE 1 LLC, AND CAJUN CUISINE LLC D/B/A OCEANA GRILL

VERSUS

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND GOVERNOR JOHN B. EDWARDS IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA, AND THE STATE OF LOUISIANA

* NO. 2021-CA-0343

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

*

*

* * * * * * *

**LOBRANO, J., CONCURS AND ASSIGNS REASONS.**

On rehearing, I respectfully concur, and I maintain my position to reverse the judgment of the district court. As expressed in my original concurrence, I find that coverage exists as a result of COVID-19 contamination. This finding is based on, *inter alia*, a reasonable interpretation of the word "physical" in keeping with the contamination theory of coverage adopted in *Widder v. Louisiana Citizens Prop. Ins. Corp.*, 11-0196, p. 4 (La. App. 4 Cir. 8/10/11), 82 So.3d 294, 296, *writ denied*, 11-2336 (La. 12/2/11), 76 So.3d 1179, and the mandated application of the ambiguity principle as construed against insurance companies and in favor of policyholders pursuant to the rules of contractual interpretation in the Louisiana Civil Code.[1]

I write only to further the discussion of *Widder* and the application of its expanded interpretation of the term "physical" in contractual insurance settings

---

[1] *See, e.g.*, La. C.C. art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."); La. C.C. art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."); La. C.C. art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.").

1

that pertain to microscopic and molecular level disease-causing contamination and insurance policies that do not include a viral or contamination exclusion. *Widder*'s holding drastically broadened the interpretation of "physical" in such settings and should have alerted insurance companies that the word "physical" has entered into the realm of ambiguity in our circuit in such settings.[2] *Widder*'s expansion of the term beyond its original meaning under its contamination theory made it susceptible to more than one reasonable interpretation, especially when viewed within the spectrum of property losses from microscopic contamination; thus, courts have found that the totaled, diminished, and/or suspended loss of a property's use, functionality, and/or reliability can constitute "physical loss or damage" under various contamination theories of coverage.[3] The arguments raised

---

[2] *See, e.g.*, Tred R. Eyerly, *Is the Presence of Coronavirus "Direct Physical Loss or Damage" Under A Property Policy?*, Haw. B.J., July 2020, at 4-7 (discussing cases in other jurisdictions finding direct physical loss or damage without harm to the structure and contrasting cases rejecting this contamination theory without physical loss; noting *Widder*'s holding that "intrusion of lead was a direct physical loss even if the building itself was not harmed" and extrapolating by extension that "many cases would seemingly find the presence of coronavirus in a building constitutes 'direct physical loss or damage' under a property policy"); Charles S. LiMandri, Milan L. Brandon, and Noel J. Meza, *Pandemic of Coverage Litigation for Business Income Losses Due to Coronavirus Plagues Insurance Industry*, 32 No. 4 Cal. Ins. L. & Reg. Rep NL 1 (comparing *Widder* to odor and vapor cases finding coverage in the absence of tangible physical alteration); *Peony Fine Clothing, LLC v. State Farm Fire & Cas. Co.*, No. CV 21-1650-WBV-MBN, 2022 WL 742439, at *4 (E.D. La. Mar. 11, 2022)(declining to apply *Widder* in the absence of showing "that the presence of COVID-19 rendered its premises uninhabitable or required remediation beyond cleaning"); *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F.Supp.3d 574, 582 (E.D. La. 2021), *aff'd sub nom. Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252 (5th Cir. 2022)(citing *Widder* and *In re Chinese Manufactured Drywall Products Liability Litigation* ("*In re Chinese Drywall*"), 759 F.Supp.2d 822, 831-32 (E.D. La. 2010) and noting that "[a]lthough such damage cannot be perceived by the senses, we found [contamination] to be a covered physical loss because it 'rendered the home unusable and inhabitable'"); *Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*, 540 F.Supp.3d 441, 448 (D. Vt. 2021)(citing *Widder* and *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, 535 F. Supp.3d 152, 161 (W.D.N.Y. 2021), *aff'd*, No. 21-1082-CV, 2022 WL 258569 (2d Cir. Jan. 28, 2022) and criticizing contamination theory applied to "all structures and, indeed, all places in the world" as opposed to a specific covered property); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-CV-04418-WHW, 2014 WL 6675934, at *8 (D.N.J. Nov. 25, 2014)(finding "physical loss of or damage to" facility when ammonia gas was discharged into facility's air and rendered facility temporarily unfit for occupancy).

[3] *See* Scott G. Johnson, What Constitutes Physical Loss or Damage in A Property Insurance Policy?, 54 Tort Trial & Ins. Prac. L.J. 95 (2019) observing:

> [S]ome courts have found that "physical loss or damage" does not require that the physical loss or damage be tangible, structural, or even visible. These courts have determined that the presence of bacteria, odors, or noxious gases in a building may constitute

by the insurance company ("Lloyd's") in its rehearing application – that "there is nothing ambiguous about a requirement of physical damage" and "[i]ts ordinary, prevailing meaning requires tangible alteration of the property" – fail to recognize *Widder*'s applicability in the context of contractual interpretation and the ambiguity principle.

In 2011, *Widder* found coverage in the absence of a distinct, demonstrable, tangible, physical alteration of the property. *Widder* expanded the word "physical" beyond its ordinary sense and adopted an expansive contamination theory in our circuit finding, *inter alia*, that "physical damage is not necessary" in allowing coverage when the contamination is at the molecular or microscopic level. *Widder*, 11-0196, p. 4, 82 So.3d at 296. Contamination theories of coverage are the result of the microscopic nature of the contamination,[4] which is "not discernible with the naked human eye." *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, 21-0343, p. 11 (La. App. 4 Cir. 6/15/22), --- So.3d ---, ---, 2022 WL 2154863, at *5. The *Widder* court found that the contamination caused the total impairment of the property's intended use, which rendered the property "unusable and uninhabitable." *Widder*, 11-0196, p. 4, 82 So.3d at 296. *Widder* then afforded coverage under a nebulous analysis with respect to the contamination and its nexus to "direct physical loss" or "damage."[5] This left the *Widder* interpretation of

---

physical loss or damage if the property is rendered uninhabitable or unfit for its intended purpose. In doing so, these cases have further broadened the interpretation of the "physical loss or damage" requirement and have decided that it is satisfied where the property's value, usefulness, or functionality has been destroyed or diminished. But coverage for these types of claims may still be excluded by contamination and pollution exclusions.

*Id*. at 117.

[4] *See generally Widder*, *supra*.

[5] *Widder* relied on *In re Chinese Drywall*, *supra*, in holding that the presence of the contaminant rendered the property "unusable or uninhabitable," which both courts equated with "direct physical loss." The *In re Chinese Drywall* court found that the alleged damages that the contaminant caused to plaintiffs' homes were a covered physical loss, and *Widder* extended that finding to conclude that the "intrusion" of the contaminant was a "direct physical loss" rendering

"physical" in a state of ambiguity, prone to judicial expansion, containment, and/or analytical confusion, and susceptible to more than one reasonable interpretation.

Thus, after *Widder*, the principle that ambiguous provisions in insurance contracts are construed in favor of policyholders is more likely to be judicially invoked in contractual insurance settings involving microscopic level disease-causing contamination insurance policies that do not include a viral or contamination exclusion.

In 2019, Lloyd's entered into an insurance contract with the policyholder ("Oceana") covering viral contamination without a clear understanding of "physical." This Court's original opinion noted, "[t]he policy does not define 'direct physical loss' or 'damage.'" *Cajun Conti LLC*, 21-0343, p. 8, --- So.3d at ---, 2022 WL 2154863, at *4. I agree with the original opinion that "viral exclusions which eliminated the insurer's liability for loss or damage caused by a virus were available on the market;" however, Lloyd's did not include a viral exclusion in the

---

the property "unusable and uninhabitable." *Widder* found that "physical damage is not necessary" in allowing coverage. *Widder*, 11-0196, p. 4, 82 So.3d at 296 (citing *In re Chinese Drywall*, 759 F.Supp.2d at 832 (quoting *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 708 (E.D. Va. 2010)). *Widder* compared the "type of loss" as "similar to the type of loss experienced from Chinese drywall." *Widder* did not define "physical," 11-0196, pp. 3-4, 82 So.3d at 296, but instead adopted a nebulous, microbial contamination theory of coverage in our circuit that allowed for the further broadening of the interpretation of the "physical loss or damage" requirement. *See* Johnson, *supra* n. 3, at 123-24, concluding:

> Physical loss or damage remains a necessary predicate to property insurance coverage. Using the dictionary definition of "physical" as a guide, many courts require that an insured demonstrate that the insured property suffered a distinct, demonstrable, and physical change or alteration to satisfy the threshold requirement for coverage. Some courts have even found that the insured has this burden even where the claimed physical damage occurs at the molecular or microscopic level. But other courts have adopted a much broader interpretation of the "physical loss or damage" requirement. These courts have found coverage in the absence of a distinct, demonstrable physical alteration of the property where the insured property has become uninhabitable or where a property's function or reliability has been impaired. Thus, in some courts' view, loss of property's use, functionality, or reliability can constitute physical loss or damage. But in doing so, these courts have largely rendered the word "physical" meaningless and have failed to account for the historical origins of the "physical loss or damage" requirement.

4

policy it drafted and sold to Oceana, which reasonably expected full all-risk coverage for viral contaminations. *Id.*, 21-0343, p. 17, --- So.3d at ---, 2022 WL 2154863, at *7. This evidence, coupled with a "vague provision,"[6] strengthens the equity and policy considerations of construing coverage in favor of Oceana and against Lloyd's pursuant to the rules of contractual interpretation. *Id.*, 21-0343, pp. 15-17, --- So.3d at ---, 2022 WL 2154863, at *7.

In construing insurance policies, consideration must be given to (1) an insurance company's rights to limit its contractually-assumed liability and to clarify the meaning of terms and provisions in a contract,[7] and (2) an insurance company's "extraordinary control over the terms of coverage" by possessing knowledge of "critical industry practice," "detailed risk determinations," and developing laws and jurisprudence.[8] When a policy does not clearly limit an insurance company's liability, including the failure to clarify the meaning of a word or theory that a court has expanded or adopted, such policy omissions strengthen the equity and policy considerations of construing coverage in favor of the policyholder pursuant to the rules of contractual interpretation set forth in the Louisiana Civil Code.[9] I invoke the ambiguity principle in the case *sub judice* to

---

[6] "The presence of this ambiguity and the existence of two equally reasonable interpretations as to what constitutes a 'direct physical loss of or damage to' the insured property requires the Court to liberally construe the provision in favor of coverage for the [policyholder] and against the [insurance company], who drafted the vague provision." *Id.*, 21-0343, p. 15, --- So.3d at ---, 2022 WL 2154863, at *7 (citations omitted).

[7] *See Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.*, 07-0251, p. 7 (La. App. 4 Cir. 10/10/07), 969 So.2d 653, 659.

[8] David J. Seno, *The Doctrine of Reasonable Expectations in Insurance Law: What to Expect in Wisconsin*, 85 Marq. L. Rev. 859, 867 (2002)(citing Mark C. Rahdert, *Reasonable Expectations Revisited*, 5 Conn. Ins. L.J. 107, 127 (1998)). *See Aguillard v. Auction Management Corp.*, 04-2804, p. 10 (La. 6/29/05), 908 So.2d 1, 9 (quoting Saul Litvinoff, *Consent Revisited: Offer, Acceptance, Option, Right of First Refusal, and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations*, 47 La.L.Rev. 699, 757-59 (1987)) (noting potential adhesionary nature of standard form insurance contracts and stating that "[o]wing to the necessities of modern life a particular kind of contract has been developed where one of the parties is not free to bargain" and "[t]he party in the weaker position is left with no other choice than to adhere to the terms proposed by the other."). *See also* n. 1, *infra*.

[9] *See* notes 1 and 8, *infra*.

encourage the placement of such insurance coverage decisions in the business conference room and not the courtroom.