NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0529n.06

No. 21-3230

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 21, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MIKMAR, INC.; MICHAELS, INC., dba LaMalfa Centre and Vine Beverage and Caterers, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| WESTFIELD INSURANCE COMPANY, | ) ) | OPINION |
| Defendant-Appellee. | ) ) | |

Before: MOORE, GRIFFIN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. MIKMAR, Inc., and Michael's Inc., which does business as "LaMalfa Centre and Vine Beverage and Caterers," together own and operate a hotel and adjoining banquet facility. Like many hospitality businesses, MIKMAR and LaMalfa lost substantial income due to the COVID-19 pandemic and the ensuing government orders generally requiring residents to stay at home. MIKMAR and LaMalfa sought to recover this lost income under commercial insurance policies that they had purchased from Westfield Insurance Company. The policies obligate Westfield to pay for some amounts of lost income when this economic loss grows out of a "direct physical loss of or damage to" the companies' properties. MIKMAR Policy, R.4-3, PageID 115; LaMalfa's Policy, R.4-4, PageID 196. The district court granted Westfield's motion to dismiss because neither the pandemic nor the government shutdown caused a "direct physical loss of or damage to" the hotel or banquet facility. In the meantime, another district court asked

the Ohio Supreme Court to consider a similar insurance-policy question. *See Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co.*, __ N.E.3d __, 2022 WL 17573883, at *3 (Ohio Dec. 12, 2022). We held this case for the Ohio Supreme Court's answer. That court has now interpreted similar policy language to bar coverage in these circumstances—consistent with our own prior answer to this question. *See id.* at *4 (quoting *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021)). Bound by *Neuro-Communication*, we affirm.

I

MIKMAR operates a hotel in northeastern Ohio. LaMalfa owns the hotel property and owns and operates an adjoining banquet facility. Like many other business owners in the hospitality industry, these companies have unfortunately suffered significant losses from the combined effects of the COVID-19 pandemic and the follow-on government orders that generally required residents to stay at home.

Before the pandemic, MIKMAR and LaMalfa had each purchased "all-risk" commercial insurance policies from Westfield. The policies indicate generally that Westfield will cover "direct physical loss of or damage to" MIKMAR's and LaMalfa's property. MIKMAR Policy, R.4-3, PageID 110; LaMalfa Policy, R.4-4, PageID 235. Two other types of coverage are relevant. The policies' "Business Income Provision" allows MIKMAR or LaMalfa to seek certain lost income or extra expenses from Westfield. Specifically, this provision permits the companies to recover for the "actual loss of Business Income" resulting from a "suspension" of their business "operations" if the suspension is "caused by direct physical loss of or damage to" MIKMAR's or LaMalfa's property. MIKMAR Policy, R.4-3, PageID 115; LaMalfa Policy, R.4-4, PageID 196. It also permits MIKMAR or LaMalfa to recover other "necessary" expenses that the companies

"would not have incurred if there had been no direct physical loss or damage to property[.]" MIKMAR Policy, R.4-3, PageID 117; LaMalfa Policy, R.4-4, PageID 196.

The policies' "Civil Authority Provision" next allows MIKMAR or LaMalfa to seek lost income and extra expenses incurred as a result of governmental responses to damage to *neighboring* property. The policies provide that the companies may seek their income and expenses if an "action of civil authority" (a government action) prohibits access to their premises because of "damage to" nearby property that resulted from a "Covered Cause of Loss." MIKMAR Policy, R.4-3, PageID 118; LaMalfa Policy, R.4-4, PageID 197. The policies define "Covered Causes of Loss" to mean "[d]irect physical loss unless" the policies otherwise exclude or limit coverage for the loss. MIKMAR Policy, R.4-3, PageID 111; LaMalfa Policy, R.4-4, PageID 224.

The policies also contain many exclusions that prohibit coverage even if they would otherwise insure certain losses. Among other exclusions, the policies note that Westfield will not pay for losses caused by a virus that can induce "physical distress, illness or disease." MIKMAR Policy, R.4-3, PageID 129; LaMalfa Policy, R.4-4, PageID 209.

Once the pandemic hit, MIKMAR and LaMalfa sought to recover their lost income under the Business Income Provision and the Civil Authority Provision. Westfield denied their claims, so MIKMAR and LaMalfa sued Westfield in state court. MIKMAR and LaMalfa sought a declaratory judgment that they were entitled to coverage and alleged that Westfield's denial of coverage breached the policies and the covenant of good faith and fair dealing. They also sought to certify several classes of businesses. Westfield removed the case to federal court on the basis of the Class Action Fairness Act.

Westfield then moved to dismiss the complaint for failure to state a claim. The district court granted this motion. *MIKMAR, Inc., v. Westfield Ins. Co.*, 520 F. Supp. 3d 933, 935 (N.D.

Ohio 2021). It reasoned that neither the pandemic nor the government shutdown orders caused a "direct physical loss of or damage to" MIKMAR's or LaMalfa's property that could trigger coverage for lost income under the Business Income Provision. *Id.* at 939–44. This reading, the court next noted, also disqualified MIKMAR and LaMalfa from coverage under the Civil Authority Provision. *Id.* at 944–45. This provision required the damage to nearby property to arise from a "Covered Cause of Loss," a phrase the policies equated with the "[d]irect physical loss" that MIKMAR and LaMalfa failed to allege. *Id*. (quoting MIKMAR Policy, R.4-3, PageID 111; LaMalfa Policy, R.4-4, PageID 224). The court went on to hold, in the alternative, that MIKMAR's and LaMalfa's claims fell within the exclusion for losses caused by a virus. *Id.* at 945–46.

MIKMAR and LaMalfa appealed. We review the district court's dismissal of their complaint de novo. *See Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021).

II

We start by framing the narrow nature of the parties' debate. They agree that Ohio contract law governs. They also agree on the governing contract rules: Ohio courts interpret unambiguous contract terms as written and they construe ambiguous terms in favor of the insured. *See Neuro-Commc'n*, 2022 WL 17573883, at *3; *Dominish v. Nationwide Ins. Co.*, 953 N.E.2d 820, 822 (Ohio 2011); *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). The parties likewise agree that their dispute under the Business Income Provision turns on whether MIKMAR or LaMalfa suffered a "direct physical loss of or damage to" their property. MIKMAR Policy, R.4-3, PageID 115; LaMalfa Policy, R.4-4, PageID 196. And MIKMAR and LaMalfa do not challenge the district court's further conclusion that the Civil Authority Provision also requires a "[d]irect physical loss" because it notes that the "damage to" nearby property must

result from a "Covered Cause of Loss." MIKMAR Policy, R.4-3, PageID 111, 118; LaMalfa Policy, R.4-4, PageID 197, 224. Given these points of agreement, this appeal turns on whether the spread of COVID-19 or the ensuing government shutdown orders could qualify as a "direct physical loss of or damage to" MIKMAR's or LaMalfa's properties (or nearby properties). Westfield says that this text is unambiguous and requires a tangible harm to property. MIKMAR and LaMalfa respond that "direct physical loss" is ambiguous and could be read to cover restrictions on the use of property.

The Ohio Supreme Court decided to consider a similar question in *Neuro-Communication*. 2022 WL 17573883, at *3. In that case, the relevant insured business provided "hearing and balance services to its patients[.]" *Id.* at *2. The Ohio government's shutdown orders forced it to close its operations for about six weeks, and it sought reimbursement for lost income under a similar insurance policy issued by Cincinnati Insurance Company. *Id.* The Ohio Supreme Court rejected the business's argument that the phrase "physical loss" could include a loss of use of its property to serve customers. *Id.* at *4. It reasoned that a "physical loss" requires "loss or damage to Covered Property that is physical in nature" and thus does not cover simply "a loss of the ability to use Covered Property for business purposes." *Id.*

In the process, the Ohio Supreme Court agreed with our own prior decision in *Santo's*. *See* 2022 WL 17573883, at *4. *Santo's* concerned an Ohio restaurant owner seeking to recover business losses caused by the pandemic and the Ohio government's responses restricting in-person dining. *See* 15 F.4th at 400. Like Westfield's insurance policies in this case, the policy at issue in *Santo's* covered the loss of business income resulting from a suspension of operations "caused by direct physical loss of or damage to property" at the covered premises. *Id.* (citation omitted). *Santo's* held that this phrase ("direct physical loss of or damage to" property) unambiguously

5

excluded losses arising from COVID-19 or related government shutdown orders. *Id.* at 401–02. We interpreted this language as covering only "tangible" deprivations of or "tangible" harms to property, like those caused by a theft or fire. *See id.* at 403 (citing 10A Steven Plitt et al., *Couch on Insurance* § 148:3 (2021)). The Ohio Supreme Court's approval of *Santo's* confirms that we properly applied Ohio contract law. *See Neuro-Commc'n*, 2022 WL 17573883, at *4.

This case raises the same question as *Neuro-Communication* (and *Santo's*), so we must reach the same answer. In cases governed by Ohio contract law, we "must follow the controlling decisions of the Ohio Supreme Court." *Henry v. Wausau Bus. Ins. Co.*, 351 F.3d 710, 713 (6th Cir. 2003). And we see no basis to distinguish the contract in this case from the one in *Neuro-Communication*. *Cf. SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 36 F.4th 23, 26–29 (1st Cir. 2022).

To be sure, a phrase in one contract does not necessarily take the same meaning as the same phrase in another contract if the context suggests that the parties intended a different meaning. *See Wilkerson*, 997 F.3d at 669–70. But the context suggests that the parties meant for the same meaning across these cases. To begin with, specialized trade usages can support an inference of consistent meaning. *Cf. Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 119 (S.D.N.Y. 1960) (Friendly, J.). And, as *Santo's* recognized, the phrases at issue in these cases "are the general touchstones of coverage . . . for most commercial property insurance policies." 15 F.4th at 402 (citing 10A *Couch on Insurance* § 148:46). That is perhaps why—as the Ohio Supreme Court noted—the great weight of appellate authority to consider this question has interpreted similar insurance policies in the same way (under other states' laws). *See Neuro-Commc'n*, 2022 WL 17573883, at *7; *see, e.g.*, *Ryan P. Estes, D.M.D., M.S., P.S.C. v. Cincinnati Ins. Co.*, 23 F.4th 695, 699–702 (6th Cir. 2022) (Kentucky law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890–91 (9th Cir. 2021) (California law); *SAS Int'l*, 36 F.4th at 26–

29 (1st Cir. 2022) (Massachusetts law); *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 258–60 (5th Cir. 2022) (Louisiana law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143–44 (8th Cir. 2021) (Iowa law); *see also Cherokee Nation v. Lexington Ins. Co.*, __ P.3d __, 2022 WL 4138429, *4 n.13 (Okla. Sept. 13, 2022) (citing cases).

In addition, other provisions in Westfield's policies confirm that they use "direct physical loss" in an identical fashion to require tangible harm. Like the policy in *Neuro-Communication*, the Business Income Provision permits an insured to recover income for business suspensions only during the "period of restoration"—a defined period that ends when the property should have been "repaired, rebuilt or replaced with reasonable speed and similar quality[.]" MIKMAR Policy, R.4-3, PageID 115, 144; LaMalfa Policy, R.4-4, PageID 196, 204. This provision would make no sense if "direct physical loss" need not be tangible. *See Neuro-Commc'n*, 2022 WL 17573883, at *4; *see also Santo's*, 15 F.4th at 402–03. Likewise, the Civil Authority Provision applies only if the government restricts access to MIKMAR's or LaMalfa's properties either because of the "dangerous physical conditions" of the nearby damaged property or because the government needs "unimpeded access to the damaged property." MIKMAR, R.4-3, PageID 118; LaMalfa Policy, R.4-4, PageID 197. This provision, too, contemplates tangible property damage.

In sum, we are bound by *Neuro-Communication*'s interpretation. Under its analysis, MIKMAR and LaMalfa have not shown the required "direct physical loss of or damage to" their properties or to nearby properties. *Neuro-Commc'n*, 2022 WL 17573883, at *4. As we noted in *Santo's*, therefore, we need not consider any other interpretive question, such as whether the virus exclusion would otherwise have barred MIKMAR's and LaMalfa's claims. *See* 15 F.4th at 406–07.

We affirm.