# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2023

Lyle W. Cayce
Clerk

No. 22-30218

Manuel Adams, Jr.,

*Plaintiff—Appellee*,

*versus*

City of Harahan,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-2794

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

This appeal arises from Manuel Adams's suit against the City of Harahan ("the City") for its alleged deprivation of his Fourteenth Amendment right to due process. Because the district court erroneously determined that Adams had a liberty interest in his career in law enforcement, we REVERSE the district court's denial of the City's Rule 12(c) motion and DISMISS Adams's due process claim.

No. 22-30218

## I.    BACKGROUND

### A.    *Chief Walker's Disciplinary Charges Against Adams*

Adams ascended the ranks to Captain over an eighteen-year career in law enforcement with the Harahan Police Department ("HPD"). He had an unblemished disciplinary record during his tenure with HPD. But that changed in October 2019, when HPD Chief of Police Robert Walker ("Chief Walker") determined that Adams was guilty of numerous offenses, including: (1) Conduct Unbecoming an Officer; (2) Unsatisfactory Performance; and (3) False Statement. As a classified civil service employee, Adams was entitled to a fifteen-day appeal window of Chief Walker's disciplinary determinations. *See* La. R. S. § 33:2561.

Adams exercised his right to appeal a week after Chief Walker's charges. However, Chief Walker emailed the Jefferson Parish District Attorney's office ("JPDA") to inform it of his disciplinary action against Adams before he exercised his right. After communicating with Chief Walker, JPDA placed Adams's name on its witness notification list (the "*Giglio* list").[1] Adams alleges that an officer's inclusion on the *Giglio* list is effectively a "death knell to a career in law enforcement." Because the *Giglio* list is at JPDA's discretion, a successful appeal by Adams would not force JPDA to remove his name from the list. Faced with no guaranteed way to get his name off of the *Giglio* list, Adams sued the City.

---

[1] JPDA maintains a witness notification list in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Those cases require JPDA to turn over any evidence favorable to the defendant. This includes evidence that the accused can use to impeach police officers that the prosecution relies on in building its case. Adams avers that his inclusion on the *Giglio* list labels him as a liar or bad cop, which operates as a bar to his continued career in law enforcement.

No. 22-30218

B.    *District Court Proceedings*

Adams brought a civil rights suit against the City for violation of his procedural due process rights, stigma-plus-infringement, and defamation under 42 U.S.C. § 1983. He included Louisiana state law claims for defamation, invasion of privacy, and negligence. The City moved to dismiss his § 1983 claims under Rule 12(c).[2]

The district court first examined his procedural due process rights claim. It rejected Adams's assertions that the City unconstitutionally violated his property interest because he was afforded due process when he exercised his right to appeal Chief Walker's determinations. It then evaluated whether the City violated his liberty interests. Notably, it recognized Adams's "liberty interest in his occupation as a law enforcement officer." It reasoned that the Supreme Court supported its conclusion that Adams has a right "to engage in any of the common occupations of life." *Kerry v. Din*, 576 U.S. 86, 94 (2015). It then held that the City violated his right by failing to provide him the "opportunity to be heard at a meaningful time and in a meaningful manner" before reporting his disciplinary charges to JPDA. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

The district court opined that the due process that the City provided Adams was unsatisfactory for at least two reasons: (1) He sufficiently alleged that Chief Walker oversaw his disciplinary proceedings and likely had bias against him; and (2) he remained deprived of his liberty interest even if his appeal was successful. Having established that Adams pleaded facts to support that Chief Walker violated his procedural due process rights based

---

[2] The City did not challenge Adams's defamation, invasion-of-privacy, or negligence claims in its Rule 12(c) motion. Therefore, those claims are not addressed in this opinion.

on a deprivation of his liberty interest, it next evaluated whether he could sustain this claim against the City.

The district court allowed Adams's claim against the City to survive the pleading stage. It first reasoned that the municipal liability analysis was straightforward because he alleged that Chief Walker acted pursuant to a policy, practice, and custom of the City. Accordingly, the City was liable because Chief Walker acted as the final policymaker on its behalf. Second, it stated that the City was liable even though JPDA put Adams's name on the list because Chief Walker "set in motion a series of events that would foreseeably cause the deprivation of [Adams's] constitutional rights." *Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir. 1999). Ultimately, it viewed the case as one where Chief Walker contrived an investigation against Adams, determined his guilt, and contacted JPDA intending to place his name on the *Giglio* list and end his career in law enforcement. Under that characterization, it determined that Adams successfully alleged a Fourteenth Amendment violation under § 1983.

Finally, the district court addressed Adams's stigma-plus-defamation claim. It held that he failed to allege facts demonstrating the "infliction of a stigma on the person's reputation by a state official" plus "an infringement of some other interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935–36 (5th Cir. 1995). The district court dismissed this claim but granted him leave to amend it.[3] The City appealed.

On appeal, the City argues that the district court erred in determining that Adams had a cognizable liberty interest in his occupation as a law enforcement officer. It asks us to reverse this determination and dismiss his

---

[3] The City does not contest the district court's decision to allow Adams to amend his stigma-plus-defamation claim, so we do not address that claim herein.

claims. If we determine that Adams has successfully alleged a violation of his liberty interest, it argues that we should still dismiss his claim because it provided him adequate due process.

## II.  STANDARD OF REVIEW

We review "de novo a district court's ruling on a Rule 12(c) motion for judgment on the pleadings." *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022). "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).

## III.  DISCUSSION

### A.  *Standing*

Adams's suit against the City raises unavoidable questions about his legal standing. Despite neither party nor the district court raising these concerns, we are required to address his standing before analyzing the merits of his claim. *See Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (explaining that federal appellate courts must evaluate potential jurisdictional defects, even when the parties and the district court fail to raise the issue). Standing requires a plaintiff to satisfy three basic elements: injury in fact, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The issue in this case turns on the causation and redressability elements.[4]

---

[4] Adams's complaint alleges numerous injuries sufficient for standing, including: lost wages, opportunity for additional employment, and irreparable damage to his reputation.

No. 22-30218

On causation, Adams contends that without Chief Walker's sham investigation, JPDA would never have considered placing him on the *Giglio* list. Because Chief Walker did not directly place him on the list, there are concerns about whether a sufficient causal link exists between his placement on the list and Chief Walker's communications with JPDA. *See California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (explaining that if "a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is . . . ordinarily substantially more difficult to establish") (internal quotations and citations omitted). But those concerns are not a barrier to his claim. The Supreme Court has explained that causation is satisfied when the injury results from "the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019). Adams alleges that Chief Walker knew that contacting JPDA about his disciplinary charges would lead to his placement on the *Giglio* list. In fact, he asserts that was the primary reason for his sham investigation. Thus, his injury stems from the "predictable effect" of Chief Walker's actions and the causal link is sufficiently preserved for the purposes of standing. *Dept't of Com.*, 139 S. Ct. at 2566.

That leaves redressability, which is best explained by highlighting what this lawsuit is *not* about. Adams did not sue to get his name off the *Giglio* list—nor could he because such relief is impossible to obtain without including JPDA as a defendant. Instead, he seeks compensatory and punitive damages. A suit for damages is conceivable against the City because Adams suffered a quantifiable injury from Chief Walker's conduct. Indeed, Adams satisfies the redressability element even if his injuries result in just nominal damages. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801–02 (2021) ("[A] request for nominal damages satisfies the redressability element of standing[.]"). Because Adams sued the proper party and sought relief that was within the district court's power to grant, he had standing. *See Lujan*,

6

504 U.S. at 560–61. We therefore proceed to the merits of his due process claim.

### B.     *Adams's Due Process Claim & Liberty Interest in His Profession*

The primary issue is whether the district court erroneously determined that Adams had a liberty interest in his "future employment as a law enforcement officer." Upon concluding that this liberty interest existed, the district court held that Adams was deprived of it without adequate due process of law. We disagree that such a liberty interest exists and conclude that his due process claim fails as a matter of law.

"The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Accordingly, to state a claim for a due process violation, a plaintiff must allege "(1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law." *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) (citing *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991)).

Liberty interests come from two sources: (1) "the Constitution itself, by reason of guarantees implicit in the word 'liberty'"; and (2) "an expectation or interest created by state laws or policies." *Id.* (citations omitted). Despite only providing two sources for discerning liberty interests, the Supreme Court has recognized that "[i]n a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972).

The City argues that the district court created an unprecedented liberty interest by recognizing a police officer's right to a career in law enforcement. It avers that the district court's error is the only reason that

Adams's claim survived the pleading stage. In response, Adams highlights the Supreme Court's decision in *Kerry*, where the Court purportedly recognized that citizens have the right "to engage in any of the common occupations of life." 576 U.S. at 94 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). The district court also cited and relied on this language in its opinion. After a close review, however, we reject the district court's recognition of Adams's right to his employment as an officer because it has no foundation in Supreme Court or Fifth Circuit precedent.

### 1.     *Supreme Court Precedent*

The district court held that "liberty, as protected by the Due Process Clause of the Fourteenth Amendment, includes the right to engage in any of the common occupations of life." In reaching this conclusion, it relied on the Supreme Court's decisions in *Kerry* and *Meyer*. *See* 576 U.S. at 94; 262 U.S. at 399. But neither of these cases provide support for the right that the district court presumed existed. We examine each case in turn.

In *Kerry*, the Supreme Court considered whether a citizen's alleged liberty interest in her marriage created the right to a review of the denial of her immigrant-spouse's visa application. *See* 576 U.S. at 88. While not central to the issue on appeal, the Court observed that it has "at times indulged" the existence of some implied rights, including the right to "engage in any of the common occupations of life." *Id.* at 94. But it quickly explained that these rights were simply passing thoughts in dicta from a now century-old case. *Id.* ("[T]his court is not bound by dicta, especially dicta that have been repudiated by the holdings of our subsequent cases."). Ultimately, it concluded that when a liberty interest protected by due process is alleged to be grounded in case law, that interest must be based on "the actual holding[] of the case[.]" *Id.* (refusing to recognize a liberty interest when the cases relied on "hardly establish[ed]" the asserted right).

The district court's dependance on *Meyer* is also misplaced. *See* 262 U.S. at 399. There, the Nebraska Supreme Court upheld the conviction of a schoolteacher for violating a state law that made it unlawful to teach German in public schools because of the state's desire for immigrants to become familiar with the English language. *See id.* at 397–99. The Supreme Court reversed the teacher's conviction, tethering its decision to parents' right to educate their children. *Id.* at 400 ("His right thus to teach and the right of parents to engage him so to instruct their children, we think, are within the liberty of the [Fourteenth Amendment]."). To be clear, whether the teacher had the right to engage in the profession of teaching was not before the Court. Instead, it only considered whether a discrete part of his job—teaching German—could be lawfully restricted by Nebraska.

Here, Adams fails to establish that he has a liberty interest in his continued employment in law enforcement that is protected by procedural due process. *Meyer* concerned a teacher's decision to instruct his students in foreign languages. *See* 262 U.S. at 399. And *Kerry* was a marriage-based immigration dispute over the denial of a visa application. *See* 576 U.S. at 88. Ultimately, Adams relies on cases that "hardly establish" the liberty interest that he asserts exists in his pleadings. 576 U.S. at 94. And as previously discussed, that the Supreme Court mentioned the potentiality of a right to "engage in any of the common occupations of life" in dicta does not aid Adams's argument. *Meyer*, 262 U.S. at 398. This is especially true where the Court has not expressly grappled with and recognized Due Process Clause protections for an individual's chosen vocation. Thus, Adams cannot rely on these cases to support his arguments on appeal. Likewise, the district court's reliance on these cases to recognize a novel liberty interest was erroneous.

We also survey Fifth Circuit precedent in search of the liberty interest that Adams asserts in his pleadings. We have never held that an individual has a liberty interest in his right to engage in a specific field of employment

that is protected by procedural due process. Accordingly, we decline to recognize such an interest now.

In sum, Adams's alleged liberty interest in his career in law enforcement has no basis in Supreme Court or Fifth Circuit precedent. Moreover, he does not provide a different constitutional anchor for this proposed liberty interest. *See Grimes*, 930 F.2d at 444. Because he fails to state facts supporting the violation of a cognizable liberty interest, he fails to plead a due process violation. Furthermore, because he has not alleged due process violations of a recognized liberty interest, we decline to address the adequacy of the process he received. Accordingly, we dismiss his claim and rule in the City's favor. *See Iqbal*, 556 U.S. at 678.

## IV. Conclusion

For the foregoing reasons we REVERSE the district court's judgment and DISMISS Adams's due process claim against the City.